19-C-1088

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 JUL 29 P 1:41

STEPHEN C. DRIES
CLERK

Thomas C Souran
Pro-Se
1500 11th Avenue #46
Union Grove, Wisconsin 53182
972-551-9964
tcs@exchequergroup.com

UNITED STATES FEDERAL COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS C SOURAN,<br><br>Plaintiff,<br><br>vs.<br><br>DELEWARE STATE FAIR, INC (a Corporation), ROBIN L. ROCKEMANN (an individual),<br><br>REGINALD CARTER (an individual)<br><br>Defendant | Case No.:<br><br>THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT, UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Thomas C Souran ("Souran") for its Complaint against Defendants Delaware State Fair, Inc., ("Fair"), Robin L. Rockemann ("Rockmann") and Reginald Carter ("Carter") alleges as follows:

### THE NATURE OF THE ACTION

1. Through the actions of the Defendants the Defendants consciously and deliberately defrauded the Plaintiff, Breached the contract and made fraudulent misrepresentations. Through the fees that the Defendants collected, and Plaintiff paid while domiciled in Wisconsin, the fees unjustly enriched Defendants. The Defendants Fair and Rockemann collected monies from

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 1

Plaintiff, which cleared the Plaintiffs bank in Wisconsin. Rockmann closed Plaintiff's concession and stated that she would have a check for half the fees paid by Plaintiff, (testimony by Plaintiff's employees at the fair over hearing Rockermann's commitment to have a check ready, testimony will be offered at trail). As of the date of this filing the Fair and Rothermann have refused to remit any check and kept the fees in a Breach of the executed contract by the parties and assertion by Defendant Rockemann that a check would be issued.

2. As a result of the Defendants' fraudulent scheme, SOURAN brings this action for fraudulent misrepresentation, in violation of Wis. Stat. §§ 895.446 and 943.20(1)(d) (theft-by-fraud) and breach of contract..

3. As a result of all the Defendant actions the Plaintiff has suffered losses in excess of $75.000.

4. SOURAN seeks damages in excess of $75,000 and based on the Defendant's fraud and breach of contract, exemplary and punitive damages, attorneys' fees and costs.

## PARTIES

5. SOURAN is an individual who resides and can be served at Union Grove, WI. 53182.

6. Delaware State Fair, Inc., is a Delaware corporation and can be served at 18500 South Dupont Highway, Harrington, Delaware, 19952. This is also the address for the registered agent for the Delaware State Fair, Inc.

7. Rockemann can be served at 18500 South Dupont Highway, Harrington, Delaware, 19952.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 2

8. Cater can be served c/o Delaware Department of Health, Thomas Collins Building, 3rd Floor, Suite 5, 540 S. Dupont Highway, Delaware, 19961.

## JURISDICTION

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1132 and 1367. This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars. This Court further has original jurisdiction pursuant to 18 U.S.C. § 1030 and 28 U.S.C. § 1367

10. This Court has personal jurisdiction over Defendants because, *inter alia*, they have purposefully participated in activities relating to breach of contract with Plaintiff, solicitation and acceptance of funds through the internet while the Plaintiff and Plaintiff's bank is located in Wisconsin,, which are part of the subject matter of this action, into the Eastern District of Wisconsin. For example, Defendants entered into an agreement with Plaintiff so Plaintiff can be a concessionaire at the Delaware State Fair July 18, 2019 to July 28, 2019. The Agreement was signed by Plaintiff while domiciled in Union Grove, Wisconsin and transmitted to Defendants through the internet. Plaintiff expected to have an executed Agreement sent back or handed to Plaintiff once he arrived in Delaware.

11. This Court has personal jurisdiction over Defendants because, *inter alia*, they have purposefully directed Plaintiffs activities relating to Plaintiffs participation at the Delaware State Fair, there breach of contract, Fraudulent Misrepresentation, and Unjust enrichment which are the subject matter of this action, into the Eastern District of Wisconsin.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 3

11. Defendants have established the requisite minimum contacts with this District, and exercise of jurisdiction would comport with traditional notions of substantial justice and fair play.

## Venue

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction in this judicial district, because all or part of the actions and inducement by the Defendants occurred in this Judicial District.

## FACTS

12. Souran applied to the Delaware State fair to be a food concessionaire at the 2019 State Fair on or about June 03, 2019. The application was submitted through the internet while Souran was in Wisconsin.

13. On or about June 03, 2019 Erica VanVessan, and assistant to Rockermann sent an e mail to Souran stating that the Fair would like to have Souran as a Concessionaire after checking out Souran's references and diagram for the tent Souran would use.

14. Souran forwarded the Health Inspection application, proof of Liability Insurance and bank account information for payment of fees, all while Souran was in Wisconsin.

15. Souran received a call from Rockermann's office asking that Souran forward to Rockermann the Health insurance Application since they have a personal relationship with the Health Department (Carter) and that the Health Department will work faster if the application is received from Rockermann.

16. Once Carter received the health application, (the health application to operate the concession described how Souran was going to store the meats, in coolers as well as a diagram showing the setup) he placed a call to Souran asking for Souran to submit another application

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 4

naming Souran's suppliers so that Carter could do more investigation of Souran's suppliers since he would be cooking and selling wild game meats. Both applications were submitted to Carter via Rockermann, described that Souran's product would be held in coolers. This was the start of Carter crusade, along with Rockermann, not to allow Souran to participate at the Fair, once again this all transpired while Souran was still in Wisconsin.

17. On July 11, 2019 Erica VanVessen, (assistant to Rockermann) sent an e mail to Souran informing Souran that Souran could ship the product to sell at the Fair directly to the Fair, some $10,000, and gave Souran the address. Souran shipped his product to the Fair.

18. Souran traveled to the Fair on July 16, 2019. He arrived and met with his employees and started setting up the concession area.

19. On July 18, 2019 Souran could not operate until Carter's Health Department approved of the operation. Inspector #302 inspected operations and issued a report that stated that wash station had to be in place prior to operating. Inspector #302 issued to Souran the Health Permit #11269 KC 19.

20. Souran instructed his employee to start cooking sausage while Souran went and procured the appropriate equipment for a wash station and required by Carters' employees..

21. Rockermann was conferring with the health officials at the Fair.

22. Immediately inspector #18 came over and closed the operation not allowing us to operate. Inspector #18 said they would be reinspection at 10 am July 19, 2019.

23. On July 19, 2019 Souran waited until 11 am for the inspectors, none showed up. Souran went and was running errands when he got a call from his employees at the fair. They put on the mobile the health inspector and Rockermann. The health inspector was going to allow us to operate however Rockermann stepped in and said that Rockermann and the Fair would

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 5

refund half the fees paid by Souran, (this will be supported by Souran's employees) but the concession was closed and Souran had to vacate the Fair grounds.

24. Souran began breaking down the site and asked Rockermann if Souran would get the check before he left. Rockermann aid the check had not cleared, Souran showed Rockermann his bank account and showed where the check was paid. Rockermann refused to issue a check and as of the date of this filing no refund as been paid. Rockermann and the Fair not only unfairly enriched themselves nut also violated page 20 X 11 of the Concessions Manual. This action of closing the concession site caused Souran losses in excess of $75,000.

25. Rockermann instructed the Fair staff to move Souran's items to the Fair Warehouse and said that they can be picked up by UPS or FedEX.

26. On July 24, 2019 Souran scheduled a pickup at the fair by UPS, (tracking number 1Z42AE050391648822), Rockermann and Fair have refused to allow UPS to pick up all food items, (Jerky and insect candies) other items purchased by Souran for operations at the fair and items that Carter instructed his team was needed by Souran to operate the concession at the Fair.

27. Souran e mailed the tracking number directly to Rockermann and to the general e mail of the fair (Erica VanVessan Assistant to Rockermann). There refusal to allow UPS to pickup Souran's items has caused a financial loss.

### The Defendants have Caused Plaintiff (Souran) Damages as a Result of their Fraudulent Scheme

28. Based on the Defendants' fraud, Plaintiff has lost inventory, equipment, sales, items purchased as required by Carters' staff, hotel payments, travel expenses, payroll and loss of reputation totaling over $75,000.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 6

29. Based on the Defendants' fraud, Plaintiff has become exposed to a claim that it repay the suppliers that shipped product to the Fair and product that the Fair and Rockermann stated they would have ready for UPS to pick up and refused to allow UPS to pick up.

30. In addition, Souran has spent significant time and expense investigating the Defendants' fraud.

### FIRST CLAIM FOR RELIEF

### (Theft-By-Fraud: Fraudulent Misrepresentation in Violation of Wis. Stat. §§ 895.446 and 943.20(1)(d))

31. Plaintiff Souran incorporates each of the above paragraphs as if fully set forth herein.

32. Beginning in June 2019, the Defendants made false representations to Souran. Specifically, the Defendants falsely represented, by agreeing to the License Agreement and the issuance, that Souran would be able to operate a food concession at the Fair and y signing the License Agreement that if the Fair closed the concession that they would rebate monies paid by Souran for days not operating per the Concession Manual.

33. The Defendants, by requesting and receiving payment, the application and issuance of the Health Permit from Souran, further falsely represented to Souran that he would be entitled to operate a food concession at the Fair.

34. When the Defendants made the above representations and issued the permit, they knew to be false and made them with the intention to deceive and defraud Souran and to induce it to act in reliance on those representations.

35. Souran, at the time these representations were made by the Defendants and at the time Souran took the actions herein alleged, was ignorant of the falsity of the representations and reasonably believed them to be true. Souran was deceived, and in reasonable reliance on these

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 7

representations, Souran was induced to and did give the Fair cash payments. Had Souran known the actual facts, it would not have made those payments, purchased inventory, incurred travel expenses, bought supplies demanded by Carter's staff and loss of sales, inventory and equipment. Souran's reliance was reasonable because it was aware of no facts to give rise to any suspicion to the contrary.

36. Using the above knowingly false representations, the Defendants defrauded Souran, in an amount exceeding $75,000.

37. As the proximate and actual result of the Defendants' fraudulent conduct, Souran suffered damages in an amount to be proven at trial, including the payments issued to the Defendants', the cost of investigation to determine the extent and nature of the fraud.

38. The aforementioned conduct of the Defendants constituted intentional misrepresentations, deceit, and/or concealment of material facts known to the Defendants with the intention on the part of the Defendants' of thereby depriving Souran of property and/or otherwise causing injury and subjecting Souran to unjust hardship in intentional disregard of Souran's rights, so as to justify an award of exemplary damages. In light of the breadth and duration of the Defendants' fraud and deceit aimed at Souran, such exemplary damages are also necessary to deter the Defendants from committing similar acts in the future.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract)**

39. Plaintiff Souran incorporates each of the above paragraphs as if fully set forth herein.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 8

40. Souran fully performed all its obligations under the License Agreement.

41. To the extent Souran issued payments and purchased equipment under the License Agreement, it has done so only before Souran discovered the Defendants' fraud, which breach the License Agreement by the Defendants.

42. The Defendants breached the License Agreement and Concession Manual by failing to allow Souran to operate the food concession and by closing Sourans' food concession by Carters staff after issuing the Health Permit. Further breach occurred when Rockermann closing Sourans' concession after Carters third staff inspection approved Souran to operate.

43. As a direct cause of the Defendants'' breach, Souran has been injured in an amount to be proven at trial, but more than $ 75,000.

### THIRD CLAIM FOR RELIEF

### (Unjust Enrichment)

44. Plaintiff Souran incorporates each of the above paragraphs as if fully set forth herein.

45. Plaintiff Souran conferred a benefit on the Defendants by making payments, buying insurance, filing a business license and Defendants' stealing inventory and equipment.

46. The Defendants' appreciated and actually knew that they were receiving the benefit of Sourans' payments to them and the Defendants' stealing Sourans' inventory and equipment.

47. The Defendants; conspired together to deny Souran the ability to operate his concession. Through there actions the Defendants' had enriched themselves through Sourans' payments and the Defendants' theft of Sourans' equipment and inventory.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 9

48. Specifically, the Defendants retained the payments by Souran and kept Sourans' inventory in full violation of the Concessions Manual and text messages by Rockermann promising that the inventory would be available for UPS to pickup.

## . PRAYER FOR RELIEF

Accordingly, Plaintiff Souran requests a judgment in its favor and against Defendants for:

A. Sourans' actual damages and loss of sales, to be proven a trial, including but not limited to all payments made by Souran to the Fair, and all other actual damages caused by the Defendants' misconduct;

B. Consequential damages;

C. All costs of investigation and litigation, including attorney's fees and costs and the value of the time spent by Souran litigating this matter, pursuant to Wis. Stat. § 895.446;

D. Exemplary damages in the amount of three times Sourans' actual damages, pursuant to Wis. Stat. § 895.446; and

E. Such further relief as the Court deems just and reasonable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 10

Dated this 26th day of July 2019

_____
Thomas C Souran Pro-Se

THEFT-BY-FRAUD: FRAUDULENT MISREPRESENTATION, BREACH OF CONTRACT - 11